**The PEOPLE of the State of Colorado, Complainant,**

v.

**Theodore Paul KOEBERLE, Attorney–Respondent.**

**No. 90SA490.**

Supreme Court of Colorado, En Banc.

May 13, 1991.

Linda Donnelly, Disciplinary Counsel, George S. Meyer, Deputy Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Mick T. Mihm, Denver, for respondent.

PER CURIAM.

The respondent in this consolidated attorney discipline case was charged with three counts of misconduct in two separate complaints. A majority of the hearing panel of the Supreme Court Grievance Committee approved the findings and recommendation of the hearing board that the respondent be suspended from the practice of law for a year and a day, pay restitution, and be assessed the costs of the proceedings. Neither the respondent nor the assistant disciplinary counsel has excepted to the hearing panel's action. We accept the recommendation of the hearing panel.

I

The respondent was admitted to the bar of this court on April 7, 1966, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court. C.R.C.P. 241.1(b). The parties entered into an unconditional partial stipulation of facts and admission of misconduct. In addition, the board received exhibits and heard the testimony of witnesses called by the assistant disciplinary counsel and the respondent. The board found that the following facts were established by clear and convincing evidence.

A

Complaint GC 89A–3

The complaint in GC 89A–3 arose from the respondent's representation of Darlene Koetting and Jerry McDonald. Count I charged the respondent with violations of DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 5–105(A) (a lawyer shall decline proffered employment which would be likely to involve him in representing differing interests); DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship); and DR 9–102(B) (a lawyer shall not mishandle the funds or property of a client).

Count II alleged that the respondent violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him). The complaint also charged the respondent with violating DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule), and C.R.C.P. 241.6(1) (any act or omission violating the provisions of the Code of Professional Responsibility is grounds for attorney discipline).

Darlene Koetting, who was a former client of the respondent, introduced the respondent to her husband, Jerry McDonald, in January 1981. McDonald retained the respondent to represent him in certain post-dissolution matters involving his former

wife, Gwen Ferree. McDonald also consulted the respondent with respect to insurance claims arising from an arson that occurred at a residence owned by McDonald and Ferree in December 1980, and from a burglary in November 1980 in which several of McDonald's guns disappeared. McDonald was a suspect in the arson and the respondent called the Clear Creek County District Attorney on McDonald's behalf. No charges were filed against McDonald at that time. The respondent eventually was successful in resolving McDonald's insurance claims.

In April 1982, Koetting informed the Clear Creek County Sheriff's Office that McDonald had confessed to the December 1980 arson. The respondent accompanied McDonald and Koetting to the sheriff's office where McDonald met privately with Officer Woodmancy. McDonald did not confess to the arson at this time, but subsequently confessed in June 1982. He eventually pleaded guilty to first-degree arson and was sentenced to five years probation. At the providency hearing, McDonald informed the court that he was representing himself. On conflicting evidence, the hearing board found that the respondent did not persuade McDonald to confess to the arson as charged in the complaint, but advised him to obtain other criminal defense counsel.

In October 1981, the respondent drafted a petition for dissolution of marriage on behalf of Koetting, and the petition was filed in Clear Creek County district court and McDonald was served with a copy. Koetting and McDonald then reconciled and the petition was dismissed for failure to prosecute in November 1983. Nothing further was done on the divorce until 1984 when, at Koetting's request, the respondent attempted to obtain permanent orders without refiling or reopening the case. The case was again dismissed on motion of counsel for McDonald.

The respondent obtained no written waiver of the conflict between his representation of Koetting and his employment by McDonald regarding the dissolution of his first marriage. Although the testimony was conflicting, the hearing board found that the respondent did not obtain McDonald's oral waiver to the conflict. Until he was permitted to withdraw in September 1983, the respondent continued to represent McDonald in the action involving post-dissolution matters from McDonald's first marriage.

In October 1984, workers found six guns that McDonald listed as missing after the November 1980 burglary of his residence in a false wall in the residence. The respondent took possession of the six guns and filed an attorney's lien on the guns in Koetting's dissolution action. The district judge in the dissolution action ordered the respondent's partner to instruct the respondent to deliver the guns to McDonald or bring them to the court. The respondent did neither, but rather delivered two of the guns to a gun dealer who refused to return them. The respondent was eventually able to deliver two of the guns to the grievance committee, but the rest were lost.

The hearing board found, and we agree, that the respondent violated DR 5–105(A) when he filed the dissolution petition on behalf of Koetting while still representing McDonald in the post-dissolution matters from his first marriage. The multiple representation presented an obvious conflict, and the respondent did not obtain McDonald's consent to the conflict after full disclosure as required by DR 5–105(C). The respondent violated DR 1–102(A)(5) when he disregarded the court order to turn in the guns, and mishandled client property contrary to DR 9–102(B). By virtue of the foregoing, the respondent also violated DR 1–102(A)(1) (violation of disciplinary rule) and C.R.C.P. 241.6(1) (act violative of Code of Professional Responsibility).[1] The respondent admitted that his handling of Koetting's dissolution action constituted neglect in violation of DR 6–101(A)(3).

---

1. The assistant disciplinary counsel has not excepted to the board's findings that it was not proven by clear and convincing evidence that the respondent violated DR 1–102(A)(4) (dishonesty) or DR 7–101(A)(3) (intentional prejudice or damage to client).

## B

### Complaint GC 90A–3

This complaint arose out of the respondent's handling of the estates of Richie and Helen Boatman. The Boatmans, husband and wife, were friends of the respondent and both died as the result of a house fire in May 1982. The respondent was named as the personal representative of both estates. The companion wills, prepared by the respondent, provided that the assets of the estates would go into a trust to be divided into equal shares for the benefit of Eric Boatman, Amie Anderson, and the St. Andrew Presbyterian Church. Eric Boatman and Amie Anderson, the Boatmans' son and daughter, were to receive one-third of their shares of the trust upon reaching age 21, one-third at 25, and the remainder at age 30.

The respondent distributed assets of the estates directly to Eric and Amie and not into the family trust. The wills were lodged with the court in May 1982, and the respondent was named personal representative of the estates within the same month. No inventory, accounting, or other filing was made with the probate court over the next two years. The estate inventories were not filed until May 15, 1984, following a specific court order to do so.

Because the respondent made improper distributions to the Boatman children directly, and not in accordance with the wills or the trust, Eric and Amie were denied the protection against their own financial mismanagement that the trust was intended to provide. In addition, the distribution left the estate without sufficient assets to pay the federal and state taxes when they were due, resulting in late payment charges of over $20,000.

In July 1988, the probate court noted that it had taken over six years to inventory and account for the assets of relatively straightforward estates. The court found that the respondent breached his fiduciary duty to the estates, and because of the respondent's lack of personal attention to the estates, had caused the estates to incur increased costs of administration.

The probate court ordered the respondent to reimburse the estates for late filing and payment of estate taxes, unreasonable and excessive fees charged to the estate, and other charges and costs. These amounts were reduced to judgment against the respondent for $30,711.84 on July 27, 1988. In October 1988, the respondent satisfied this judgment out of his own funds.

The hearing board determined that the respondent's professional judgment in the handling of the Boatmans' estates was impaired because of his emotional attachment to the family and his distress over the Boatmans' tragic deaths. The board found no evidence that the respondent attempted to enrich himself at the expense of the estates. Even though the estates were handled contrary to the provisions of the wills and trust, and took much too long to wind up, the board concluded that the respondent made good the damage he caused the estates by paying the judgment against him.

The respondent stipulated, and we agree, that his conduct violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice); DR 2–106(A) (a lawyer shall not charge or collect an excessive fee); DR 6–101(A)(3) (neglect); and DR 7–101(A)(3) (intentional damage or injury to a client).[2] Because of the foregoing, the respondent also violated DR 1–102(A)(1) and C.R.C.P. 241.6(1).

## II

The hearing panel approved the hearing board's recommendation that the respondent be suspended from the practice of law for one year and one day, pay $665 restitution for the lost guns, and be assessed the costs of this proceeding. We accept this recommendation.

---

**2.** The hearing board found that the charge that the respondent violated DR 1–102(A)(4) (dishonesty) when he advised Amie Anderson that the estates would be closed within a matter of weeks or months was not proven by clear and convincing evidence. The assistant disciplinary counsel has not excepted to this finding.

The respondent represented conflicting interests in the dissolution proceeding involving Koetting while still representing McDonald, Koetting's husband, in post-dissolution proceedings relating to McDonald's first marriage. In addition, the respondent, as the personal representative of the estate of the Boatmans, charged and collected excessive attorney fees, improperly distributed the assets, and negligently failed to inventory and provide an accounting to the court. *See People v. Sullivan,* 802 P.2d 1091, 1095 (Colo.1990) (charging and collection of excessive estate fees warrants six-month suspension). Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), in the absence of aggravating or mitigating factors, suspension is an appropriate sanction "when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." *ABA Standards* 4.12.

The hearing board concluded that the following factors were present in aggravation: (1) that the respondent has a history of prior disciplinary offenses, including two letters of admonition and a private censure, *ABA Standards* 9.22(a); (2) multiple offenses, *id.* at 9.22(d); (3) that the victims were vulnerable, *id.* at 9.22(h); and (4) the respondent has substantial experience in the practice of law, *id.* at 9.22(i). In mitigation, the hearing board found: (1) the absence of a dishonest or selfish motive, *id.* at 9.32(b); (2) the imposition of other penalties or sanctions, *id.* at 9.32(k); and (3) the presence of remorse, *id.* at 9.32(*l*). After a consideration of the seriousness of the charges in their totality, and weighing the aggravating factors against the mitigating factors, we conclude that suspension for a year and a day is warranted and will adequately serve to protect the public.

### III

It is hereby ordered that Theodore Paul Koeberle be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. C.R.C.P. 241.21(a). It is further or-

dered that Koeberle make restitution by depositing $665 into the District Court for Jefferson County, to be disposed of pursuant to court order in Civil Action No. 86 DR 845. It is further ordered that Koeberle pay the costs of this proceeding in the amount of $2,100.63 within ninety days after the announcement of this opinion, to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202. Koeberle shall not be reinstated until after he has complied with C.R.C.P. 241.22(c) & (d).

